**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEVIN SIGGERS, | C.A. No. 03-355 Erie |
|       **Plaintiff** | (Judge Susan Paradise Baxter) |
| vs. | **ELECTRONICALLY FILED PLEADING** |
| UNITED STATES OF AMERICA, JOHN LAMANNNA, DEBORAH FORSYTH, MARTY SAPKO, and STEPHEN HOUSLER | **PLAINTIFF'S BRIEF IN OPPOSITION DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |
| | Filed on behalf of:  Plaintiff Kevin Siggers |
| | Counsel of record for this party: |
| | Richard A. Lanzillo, Esq. |
|       **Defendants** | Knox McLaughlin Gornall & Sennett, P.C. |
| | 120 West 10th Street |
| | Erie, PA  16501 |
| | Telephone  (814) 459-2800 |
| | Facsimile (814) 453-4530 |
| | Email: rlanzill@kmgslaw.com |
| | PA53811 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff, Kevin Siggers, through his counsel, Knox, McLaughlin, Gornall & Sennett, P.C., files the following as his Brief in Opposition to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment.

**I.     INTRODUCTION**

Plaintiff commenced this action against Defendants asserting claims arising out of hazardous working conditions to which he was exposed during his incarceration at the Federal Correctional Institution in McKean, Pennsylvania ("FCI McKean").  Defendants have moved to dismiss Plaintiffs Amended Complaint or, in the alternative, for summary judgment.  Defendants'

motion should be denied. Plaintiff has asserted valid constitutional claims as authorized under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and a viable claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.

## II. RELEVANT FACTUAL BACKGROUND

### A. Hazardous Working Conditions at FCI McKean

Plaintiff is a Federal inmate currently incarcerated in the Federal Correctional Institution ("FCI") in Bradford, PA. Plaintiff's claims in this case arise out of his incarceration at FCI McKean in Bradford, Pennsylvania, which incarceration commenced on October 21, 1998. Between approximately March 23, 1999 and March, 2006 plaintiff has been assigned to the Federal Prison Industries, Inc. ("FPI", or trade name "UNICOR") factory at FCI McKean. Amended Complaint ¶11. FPI is a wholly-owned government corporation, created by Congress in 1934. FPI operates factories in several locations across the country and manufactures a variety of products, including office furniture and industrial products. <u>See</u> Defendants' Exhibit 213.

At all times relevant to this case, the FCI McKean UNICOR factory manufactured office furniture. <u>See</u> Defendant's Exhibit 214. Throughout his employment at UNICOR, Plaintiff was instructed to work in and around areas where Micore mineral fiber boards were being cut, sawed, sanded, machined and otherwise handled by Plaintiff and others. These processes produced silica dust as a byproduct. Defendants instructed Plaintiff and other inmates to clean and clear dust from the floor and machines within the facility both by sweeping the dust with brooms and by mechanically blowing the dust with air hoses. These processes caused the dust to become airborne and ultimately to settle all over Plaintiff's person and clothing. At the time of plaintiff's assignment to the UNICOR facility, the Defendants knew or

were on notice that the materials and processes in use at the facility exposed plaintiff and other workers to serious risks and hazards, including exposure to silica dust from the use and alteration of Micore boards. Silica dust is a known carcinogen and a cause of serious respiratory ailments and conditions and other health problems. The exhaust and ventilation systems at FCI McKean's UNICOR facility were insufficient to prevent exposure of Plaintiff and other workers to dangerous levels of silica dust and other dangerous byproducts of the manufacturing process. Amended Complaint, ¶¶14-27.

The only protection provided by Defendants to Plaintiff and others was a disposable "Do it Best" or "Breathe Easy" dust mask, which was distributed in a package that contained the following warning:

> This mask is not suitable for use against toxic or hazardous air contaminants, such as, but not limited to paint spray mists, asbestos, **silica**, cotton or other toxic dusts, fumes, gases and vapors.

See Document #38, Exhibit 14; Amended Complaint ¶40.

Moreover, the record contains evidence that the Material Safety Data Sheet ("MSDS") maintained by the Defendants with regard to the Micore fiber board was altered by hand, such that, under the section devoted to personal protection, the word "respirator" was marked out and replaced with the word "mask" or "dust" in order to falsely indicate to UNICOR workers that dust masks provided sufficient protection against inhalation of the airborne silica dust and other dangerous manufacturing byproducts that were present at in the UNICOR facility.

Defendants' actions and omissions relative to the dangers and hazards associated with Micore boards were part of an overall pattern of deliberate indifference by defendants to the safety and health of workers at the UNICOR facility, which pattern included *inter alia* (1) allowing the accumulation of flammable vapors in the work area in violation of 29 C.F.R.

3

§1910.106(e)(6)(i); (2) failure to provide appropriate instructions and training regarding chemicals in use at the workplace in violation of 29 C.F.R. §1910.1200(h)(2)(ii) and 29 C.F.R. §1910.1200(h); (3) allowing obstruction of proper airflow and air filtration within certain work areas in violation 29 C.F.R. §1910.107(b)(1); (4) permitting installation of combustible materials within the spray booth of the UNICOR facility in violation of 29 C.F.R. §1910.107(b)(1); (5) failing to include appropriate sprinkler equipment in certain areas of the facility in violation of 29 C.F.R. §1910.107(b)(5)(iv); (6) allowing improper storage and obstructions around the paint booth of the facility in violation of 29 C.F.R. §1910.107(b)(9); (7) allowing combustible residue from manufacturing to accumulate in work areas in violation of 29 C.F.R. §1910.107(g)(2); (8) failing to provide and/or require use of protective equipment where reasonably necessary for the protection and safety of workers in violation of 29 C.F.R. §1910.132(a); (9) failure to observe required "lock-out/tag-out" procedures for the protection and safety of workers in violation of 29 C.F.R. §1910.147(d)(4)(i); (10) allowing storage of materials in a manner and location that created an unreasonable risk of fire or combustion within the facility in violation of 29 C.F.R. §1910.176(b), 29 C.F.R. §1910.252(a)(2)(vii), and 29 C.F.R. §1910.303 (g)(1)(i); (11) requiring operation of machines and other equipment within the facility that lacked proper guarding or other safety devises reasonably necessary for the protection and safety of workers in violation of 29 C.F.R. §1910.212(a)(1), 29 C.F.R. §1910.212(a)(3)(ii), 29 C.F.R. §1910.213(r)(4), and 29 C.F.R. §1910.119(c)(2)(i); (12) allowing the existence of conditions that unreasonably exposed workers to cave-in hazards while conducting work operations in violation of 29 C.F.R. §1926.651(j)(2); (13) failure to install or place guarding necessary to protect workers from the hazard of impalement in violation of 29 C.F.R. §1926.701(b); (14) failure to install railings necessary to protect workers from fall hazards in

violation of 29 C.F.R. §1910.23(c)(1); and (15) failure to provide instruction and training regarding the proper use of respirators in the workplace in violation of 29 C.F.R. §1910.134(k)(6). Amended Complaint ¶24.

During his employment at the UNICOR facility, Plaintiff was repeatedly and consistently exposed to silica dust, vitreous fiber, perlite, slag wool, mineral wool, acetone, Toluene, Hexane isomers, N-hexane and other dangerous materials through aspiration, inhalation and direct contact with Plaintiff's skin, lungs, sinuses and eyes. As a result of the dangerous conditions that were permitted to exist at the UNICOR facility, Plaintiff sustained personal injuries, many of which are believed to be permanent in nature, including chronic respiratory problems, sinusitis, irritation and damage to his lungs, sinuses, eyes and skin and sensitization to materials. In addition, Plaintiff has been placed at an increased risk of developing future diseases and health problems, including, but not limited to, cancer, Silicosis, Pneumoconiosis, emphysema, asthma, mycobacterium tuberculosis, nervous system disturbances and peripheral neuropathy. Amended Complaint ¶¶25-27.

## III. ARGUMENT

### A. Supreme Court and Third Circuit precedent precludes the entry of summary judgment where, as here, there has been no discovery and the Amended Complaint states viable causes of action.

Defendants have styled their motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, as a motion for summary judgment under Fed.R.Civ.P. 56 (c). "In deciding a motion to dismiss, [the Court] must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156,159 (3rd Cir. 2004). The Court "may grant such a motion only

where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

In contrast to a motion to dismiss, which tests the legal sufficiency of the complaint, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. Id. at 324. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmoving party. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.1992), cert. denied, 507 U.S. 912 (1993). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. Id. Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir.1992). The Court, however, may deny summary judgment if the motion is premature. Anderson, 477 U.S. at 250 n. 5. Because a plaintiff should not be "'railroaded' by a premature motion for summary judgment," the United States Supreme Court has held that a

6

district court must apply Federal Rule of Civil Procedure Rule 56(f) if the opposing party has not made full discovery. Celotex, 477 U.S. at 326. Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f) (emphasis added). Thus, the district court is empowered with discretion to decide whether the movant's motion is ripe and thus determine whether to delay action on a motion for summary judgment. St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1313 (3d Cir.1994); Sames v. Gable, 732 F.2d 49, 51 (3d Cir.1984). However, the non-moving party must be given the opportunity to conduct adequate discovery before the court properly may grant a motion for summary judgment. Dowling vs. City of Philadelphia, 855 F.2d 136, 139 (3rd Cir. 1989). In the present case, plaintiff has had no opportunity to engage in any discovery to challenge the self-serving factual recitation offered by the defendants in support of their motion for summary judgment. Indeed, under Fed.R.Civ.P. 26(d), no discovery is permissible prior to the closure of the pleadings and the parties' Rule 26(f) conference.[1]

      **B.    Plaintiffs' Amended Complaint Fully Supports a Finding that Defendants were Deliberately Indifferent to Substantial Risks of Serious Harm to Plaintiff in Connection with His Working Conditions at the UNICOR Facility.**

---

[1] Under Rule 26(a)(1)(E)(iii), initial disclosure requirements and other Rule 26 procedures are generally inapplicable in an "action brought without counsel by a person in custody of the United States…" However, this exclusion would no longer apply to this case now that counsel has been appointed for the plaintiff. Moreover, plaintiff was hardly in a position to initiate meaningful discovery when he was acting pro se.

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976). Further, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling, 509 U.S. at 31. This includes environmental hazards that pose an unreasonable risk of serious damage to future health. Id. at 33-35.

In the present case, plaintiff was exposed to hazardous silica dust and other toxic materials in connection with his employment in the UNICOR facility. In many ways, this case is analogous to Helling v. McKinney, wherein the Supreme Court held that a cause of action exists under the Eighth Amendment when a prisoner alleges that prison officials have exposed him, with deliberate indifference, to levels of environmental tobacco smoke ("ETS"). 509 U.S. at 35. In this case, the known hazardous substances were silica dust and other toxic byproducts of working with Micore board and Locweld. To appreciate the dangerous nature of these substances and the need for safety and health precautions, one would need note only the content and warnings of the MSDS for the products at issue.

To prevail on an Eighth Amendment claim a plaintiff must satisfy both an objective component and a subjective component. See Wilson, 501 U.S. at 298-300. First, objectively, the deprivation alleged must be "sufficiently serious" to be considered cruel and unusual. See Farmer v. Brennan, 511 U.S. at 834 (1994) (citing Wilson, 501 U.S. at 298); McNeil v. Lane, 16 F.3d 123, 125 (7th Cir. 1993). For a claim based on a failure to prevent harm, an inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. As for the subjective component, a plaintiff must show that defendants had a sufficiently culpable state of mind; that is that they

8

knew of the risk and operated with "deliberate indifference" to the inmate's health or safety.  Id. See Drake v. Velasco, 207 F.Supp.2d 809 (N.D. Ill 2002)(holding that the inmate's allegations regarding failure of correctional institution to provide "sanitary" meals supported a claim of deliberate indifference).

In this case, Plaintiff alleges that he was exposed to Micore Board fibers, and sawdust without appropriate ventilation and/or protective gear.  These allegations are fully supported by the facts of this case.  Throughout his employment at UNICOR, Plaintiff was instructed to work in and around areas where Micore mineral fiber boards were being cut, sawed, sanded, machined and otherwise handled by Plaintiff and others.  These processes produced silica dust as a byproduct.  Defendants instructed Plaintiff and other inmates to clean and clear dust from the floor and machines within the facility both by sweeping the dust with brooms and by mechanically blowing the dust with air hoses.  These processes caused the dust to become airborne and ultimately to settle all over Plaintiff's person and clothing.  At the time of plaintiff's assignment to the UNICOR facility, the Defendants knew or were on notice that the materials and processes in use at the facility exposed plaintiff and other workers to serious risks and hazards, including exposure to silica dust from the use and alteration of Micore boards.  Silica dust is a known carcinogen and a cause of serious respiratory ailments and conditions and other health problems.  The exhaust and ventilation systems at FCI McKean's UNICOR facility were insufficient to prevent exposure of Plaintiff and other workers to dangerous levels of silica dust and other dangerous byproducts of the manufacturing process.  Amended Complaint, ¶¶11-27.

In their brief in support of Motion for Summary Judgment, Defendants deny that Plaintiff and others were exposed to dangerous levels of silica dust. As "evidence" of their position, Defendants assert that, on July 31, 2001, in response to a letter from OSHA, FCI

9

McKean had Microbac Laboratories conduct an indoor air quality survey of the UNICOR factory. Defendants further contend that, <u>on that date</u>, and the date of an OSHA inspection, air quality was found to be within OSHA standards. This "evidence" is woefully insufficient to establish Defendants' entitlement to summary judgment. First, there is no evidence or reason to believe that the conditions that existed on July 31, 2001, or any other date selected by defendants, were representative of the working conditions to which Plaintiff and others were exposed during their employment at UNICOR. The Microbac air quality survey and OSHA visit were far from surprise inspections such that these dates could reasonably be expected to represent typical working conditions at the facility. Rather, the Microbac survey was prearranged by Defendants such that they had ample opportunity to take steps to "clean-up" operations and the facility in preparation for the survey. There simply is no basis in the record to support a finding that conditions on July 31, 2001 or the date of the OSHA inspection were representative of general or typical working conditions at the facility. Thus, Defendants have failed in their threshold burden of establishing the absence of a material issue of fact regarding the safety of conditions at the UNICOR facility. Moreover, as noted, Plaintiff has had no opportunity to develop a record regarding the actual working conditions at the facility because he has been unable to take any discovery regarding this and the other factual issues of this case.

Moreover, the only protection provided by Defendants to Plaintiff and others was a disposable "Do it Best" or "Breathe Easy" dust mask, which was distributed in a package that contained the following warning:

> This mask is not suitable for use against toxic or hazardous air contaminants, such as, but not limited to paint spray mists, asbestos, **silica**, cotton or other toxic dusts, fumes, gases and vapors.

<u>See</u> Document #38, Exhibit 14; Amended Complaint ¶40.

10

As further evidence of deliberate indifference, the record contains evidence that the Material Safety Data Sheet ("MSDS") maintained by the Defendants with regard to the Micore fiber board was altered by hand, such that, under the section devoted to personal protection, the word "respirator" was marked out and replaced with the word "mask" or "dust" in order to falsely indicate to UNICOR workers that dust masks provided sufficient protection against inhalation of the airborne silica dust and other dangerous manufacturing byproducts that were present at in the UNICOR facility.

Defendants' actions and omissions relative to the dangers and hazards associated with Micore board was part of an overall pattern of deliberate indifference by defendants to the safety and health of workers at the UNICOR facility, which pattern included *inter alia* (1) allowing the accumulation of flammable vapors in the work area in violation of 29 C.F.R. §1910.106(e)(6)(i); (2) failure to provide appropriate instructions and training regarding chemicals in use at the workplace in violation of 29 C.F.R. §1910.1200(h)(2)(ii) and 29 C.F.R. §1910.1200(h); (3) allowing obstruction of proper airflow and air filtration within certain work areas in violation 29 C.F.R. §1910.107(b)(1); (4) permitting installation of combustible materials within the spray booth of the UNICOR facility in violation of 29 C.F.R. §1910.107(b)(1); (5) failing to include appropriate sprinkler equipment in certain areas of the facility in violation of 29 C.F.R. §1910.107(b)(5)(iv); (6) allowing improper storage and obstructions around the paint booth of the facility in violation of 29 C.F.R. §1910.107(b)(9); (7) allowing combustible residue from manufacturing to accumulate in work areas in violation of 29 C.F.R. §1910.107(g)(2); (8) failing to provide and/or require use of protective equipment where reasonably necessary for the protection and safety of workers in violation of 29 C.F.R. §1910.132(a); (9) failure to observe required "lock-out/tag-out" procedures for the protection and

safety of workers in violation of 29 C.F.R. §1910.147(d)(4)(i); (10) allowing storage of materials in a manner and location that created an unreasonable risk of fire or combustion within the facility in violation of 29 C.F.R. §1910.176(b), 29 C.F.R. §1910.252(a)(2)(vii), and 29 C.F.R. §1910.303 (g)(1)(i); (11) requiring operation of machines and other equipment within the facility that lacked proper guarding or other safety devises reasonably necessary for the protection and safety of workers in violation of 29 C.F.R. §1910.212(a)(1), 29 C.F.R. §1910.212(a)(3)(ii), 29 C.F.R. §1910.213(r)(4), and 29 C.F.R. §1910.119(c)(2)(i); (12) allowing the existence of conditions that unreasonably exposed workers to cave-in hazards while conducting work operations in violation of 29 C.F.R. §1926.651(j)(2); (13) failure to install or place guarding necessary to protect workers from the hazard of impalement in violation of 29 C.F.R. §1926.701(b); (14) failure to install railings necessary to protect workers from fall hazards in violation of 29 C.F.R. §1910.23(c)(1); and (15) failure to provide instruction and training regarding the proper use of respirators in the workplace in violation of 29 C.F.R. §1910.134(k)(6).  Amended Complaint ¶24.

        During his employment at the UNICOR facility, Plaintiff was repeatedly and consistently exposed to silica dust, vitreous fiber, perlite, slag wool, mineral wool, acetone, Toluene, Hexane isomers, N-hexane and other dangerous materials through aspiration, inhalation and direct contact with Plaintiff's skin, lungs, sinuses and eyes.  As a result of the dangerous conditions that were permitted to exist at the UNICOR facility, Plaintiff sustained personal injuries, many of which are believed to be permanent in nature, including chronic respiratory problems, sinusitis, irritation and damage to his lungs, sinuses, eyes and skin and sensitization to materials.  In addition, Plaintiff has been placed at an increased risk of developing future diseases and health problems, including, but not limited to, cancer, Silicosis, Pneumoconiosis,

emphysema, asthma, mycobacterium tuberculosis, nervous system disturbances and peripheral neuropathy. Amended Complaint ¶¶25-27.

Thus, the facts of this case are not only analogous to the facts that the Supreme Court found to be actionable in Helling, the facts of this case present an even more compelling basis for finding both a serious health risk to Plaintiff and deliberate indifference on the part of the Defendants.

> C. **The Amended Complaint states Valid Claims against All Individual Defendants, Including Defendants LaManna, Sapko, Forsyth, and Housler.**

A plaintiff, in order to state a viable civil rights claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of law; and 2) that said conduct deprived the Plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). To find a supervisory official personally liable for the unconstitutional acts of his subordinates, it must be shown that the supervisor had a duty to instruct the subordinate to prevent constitutional harm, and that "as a result of the official's failure to instruct, the Plaintiff was harmed in the manner threatened." Haynesworth v. Miller, 820 F.2d 1245, 1262 (D.C. Cir. 1987); MacKinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995); Redman, 942 F.2d at 1446-1447; Hansen, 885 F.2d at 646; See also Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is made; or for conduct that showed a reckless or callous indifference to the rights of others.); Hunt v. Dental Dept, 865 F.2d 198, 200 (9th Cir. 1989) (inmate fails to allege any facts showing role

13

head of state department of corrections played in denial of dental care); Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam) (warden's responsibility for generally supervising the operations of the prison not sufficient to establish personal involvement).  Therefore, personal involvement or some affirmative action on the part of a defendant is necessary before he may be found liable for a civil rights violation.  See Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988); Stoneking v. Bradford Area School District, 882 F.2d 720, 729-30 (3d Cir.), cert. denied, 493 U.S. 1044 (1990).

A sufficient causal connection may be established by showing that the supervisor set in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the injury.  Larez, 946 F.2d at 645; Redman, 942 F.2d at 1447.  A supervisor may also be liable for constitutional violations by his subordinates if the supervisor knew of the violations and failed to prevent them.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984).  Further, supervisors may be liable if the alleged deprivation resulted from a failure to properly train or supervise personnel, or from an official policy or custom for which the defendants were responsible.  Ybarra, 723 F.2d at 680.

In the present case, the Amended Complaint alleges an adequate basis for liability against each of the individual Defendants.  As to each such Defendant, the Amended Complaint alleges either or both the individual personal involvement in the actionable conduct that resulted in constitutional injury to Plaintiff or his or her responsibility for adoption or implementation of the policy or policies that led to Plaintiff's constitutional injury.  At the pleading stage of this action, Plaintiff's claims against each of the individual Defendants are sufficient under applicable case law.

> **D.     The Rights of Plaintiff Violated by Defendants were "Clearly Established," and No Defendants is Entitled to Qualified Immunity.**

Qualified immunity shields government officials performing discretionary functions only if their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Anderson v. Creighton, 483 U.S. 635 (1987), the Supreme Court further clarified the standard for qualified immunity, stating: "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action,... assessed in light of the legal rules that were "clearly established" at the time it was taken." Id. at 639 (citation omitted).

In the present case, Defendants cannot seriously contend that the constitutional rights of Plaintiff at issue were not clearly established at all times relevant to this action. The contours of the Eighth Amendment rights of inmates regarding freedom from exposure to environmental hazards while incarcerated was clearly established no later than 1993, when the Supreme Court decided Helling v. McKinney, 509 U.S. 25 (1993). While it is true that government officials are not expected to be legal scholars like law professors, Ward v. San Diego County, 791 F.2d 1329, 1332 (9th Cir.), cert, denied sub nom., Duffy v. Ward, 483 U.S. 1020 (1987), any reasonable official in the position of the Defendants in this case would have recognized the illegality of their deliberate indifference to the foregoing rights.

## IV.    **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or, in the Alternative, for Summary Judgment.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

BY: /s/ Richard A. Lanzillo, Esq.
    Richard A. Lanzillo, Esquire
    120 West Tenth Street
    Erie, PA  16501
    Telephone (814) 459-2800
    Facsimile (814) 453-4530
    Email rlanzillo@kmgslaw.com
    PA53811

# 663888