IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL W. HILL, | ) Docket No. 03-323E |
| | ) (Judge Susan Paradise Baxter) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| JOHN J. LAMANNA, WILLIAM K. | ) |
| COLLINS, MARTY SAPKO, | ) |
| STEPHEN HOUSLER, ROBERT | ) |
| KLARK, ROBERT REOME, | ) |
| BETH FANTASKEY, and | ) |
| DEBORAH FORSYTH, | ) |
| | ) |
| Defendants | ) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| LESLIE R. KELLY, | ) Docket No. 03-368E |
| | ) (Judge Susan Paradise Baxter) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| JOHN J. LAMANNA, MARTY SAPKO, | ) |
| DEBORAH FORSYTH, STEPHEN | ) |
| HOUSLER | ) |
| | ) |
| Defendants | ) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| KEVIN SIGGERS, | ) C.A. No. 03-355 Erie |
| | ) (Judge Susan Paradise Baxter) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, ) | |
| JOHN LAMANNNA, DEBORAH | ) |
| FORSYTH, MARTY SAPKO, and | ) |
| STEPHEN HOUSLER, | ) |
| | ) |
| Defendants | ) |

------------------------------------------------------------

| | |
|---|---|
| MYRON WARD, | ) Docket No. 04-11 |
| | ) (Judge Susan A. Paradise Baxter) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| JOHN LAMANNA, DEBORAH | ) |
| FORSYTH, MARTY SAPKO, | ) |
| STEPHEN HOUSLER, NED WATSON, | ) |
| | ) |
| Defendants | ) |

------------------------------------------------------------

| | |
|---|---|
| KENNY HILL, | ) Docket No. 05-160E |
| | ) (Judge Susan Paradise Baxter) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN J. LAMANNA, DEBORAH | ) |
| FORSYTH, MARTY SAPKO, and | ) |
| STEPHEN HOUSLER | ) |
| | ) |
| Defendants | ) |

## DECLARATION OF BRENDAN M. CLAYBAUGH, COMPLIANCE SAFETY AND HEALTH OFFICER

I, Brendan M. Claybaugh, Compliance Safety and Health Office do declare and state as follows:

1. I am a compliance safety and health officer for the Department of Labor, Occupational Safety and Health Administration (OSHA). I am assigned to OSHA's Erie Area Office. I have been so employed since November, 1999.

2. I am aware that a number of Federal inmates who are presently, or had been previously assigned to FCI McKean, have filed lawsuits in which they allege they were exposed to a hazardous work environment while working with Micore Board in

the Federal Prison Industries, Inc. (UNICOR) factory at the Federal Correctional Institution (FCI) McKean.

3. On April 10, 2003, OSHA received a complaint regarding the air quality of the UNICOR factory at FCI McKean. This complaint involved concerns related to dust exposures. **Attachment A is a true and correct copy of a redacted version of the complaint I received.**

4. Pursuant to OSHA directives, notice will normally be provided before an OSHA compliance officer will inspect a Federal prison. I made contact with the Safety Manager at FCI McKean on April 15, 2003, and entered the institution to conduct an initial walk-around on April 16, 2003. **See Attachment B**.

5. On my initial walk-around, my impression was that the factory lacked any indication of a problem with the quality of the air. I also did not identify any signs that a cloud of dust had existed and been subsequently removed prior to my arrival, such as: excess dust under the machines, on the sills, or in other hard to reach areas.

6. Small layers of dust were found on various surfaces.

7. My initial observations, as well as those made during subsequent visits, were recorded on a video showing the general environment within the factory. This video does not indicate support for dust clouds or any heavy dust exposure. **Attachment C is a true and correct copy of the video made during my visits to FCI McKean.**

8. In fact, contrary to the complaint, and as the attached video shows, it appeared that most generated dust was exhausted by the ventilation system and removed through duct work to an outside repository.

9. On May 12, 2003, the Erie Area Office received a second complaint regarding the air quality in the factory. I conducted a second visit to the institution on May 14, 2003 as a continuation of my investigation into the first complaint that was received on April 10, 2003. Again, I conducted a walk-through. This time I also collected wipe and bulk samples. I concluded that I should conduct additional air sampling in order to ensure that I was being as thorough as possible with respect to our investigation. **See Attachment B**.

10. Due to scheduling conflicts within OSHA, air sampling could not be conducted until June 17, 2003. On June 17 and 18, I visited the factory, and took air sampling data. As the attached videotape shows, there was not a significant change in the air quality or conditions in the factory in the period of time between my first and the air sampling. **See Attachment C. Attachment D is a true and correct copy of the raw data, logs and notes, collected during the air sampling**.

11. The raw data from the air sampling was sent to a laboratory in Salt lake City, Utah where it was tested. The results of this test indicated an insignificant level of nuisance dust created by the Micore Board. **Attachment E is a true and correct copy of the Air Sampling Test Results**.

12. During the course of my investigation, I also interviewed several inmate workers from the factory. The inmates expressed concern about the dust in the factory.

13. I inspected the ventilation equipment at FCI McKean as part of my investigation. The level of dust generated appeared to be adequately exhausted by the system as supported by sampling results. The system is actually two independent ventilation

systems. Duct work and hoses connect each of the machines to one of the ventilation systems.

14. I continued my investigation of the factory until August 2003. At that time, I issued two documents to FCI McKean.

15. First, I issued a letter regarding the air sampling which had occurred. This letter indicated that although worker exposure to silica dust and other byproducts of Micore board did not exceed 10% of allowable levels, we made seven recommendations with respect to the conditions in the factory and the handling of Micore board.

16. These recommendations were not designed to significantly reduce the level of dust since the measured dust levels did not exceed 10% of allowable levels. Instead, these recommendations were primarily designed to reduce worker contact with any unavoidable dust which may have been generated. **Attachment F is a true and correct copy of the letter signed by John Stranahan**.

17. Second, OSHA issued a Notice of Unsafe or Unhealthful Working Conditions relating to my observations and tests conducted at FCI McKean. None of the Serious violations noted in that document related to the air quality in the factory or the handling of Micore Board.

18. When OSHA enters a factory to investigate a complaint, we are typically looking for the items included in the initial complaint. Other violations which are in plain view, or otherwise clearly an observable violation, however, will be noted as well.

19. Many of the observations I noticed related to fire hazards, storage of various chemicals, labeling, and similar concerns – not the air quality for which I was

originally called into the factory. **Attachment G is a true and correct copy of the Notice of Unsafe or Unhealthful Working Conditions.**

20. With respect to the Micore board, I made only one observation, which was considered as an "Other Than Serious" violation.

21. To the best of my knowledge and belief, all of the violations noted in the Notice of Unsafe or Unhealthful Working Conditions were satisfactorily resolved by the institution staff.

22. Finally, by way of clarification, it is my understanding that there is some dispute as to whether one board was cut at a time while I was observing the factory, or whether three boards were cut. For purposes of the amount of dust in the air and the air sampling, this would not have made a relevant difference.

23. After reviewing my notes of this investigation, I do not now, nor did I then, have any concerns with respect to the levels of dust in the UNICOR factory at FCI McKean.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

_____  1/25/07
Brendan M. Claybaugh          Date
Compliance Safety and Health Officer
Occupational Safety and Health Administration